JS 44 (TXND Rev. 2/10)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS
Meats by Linz, Inc

## DEFENDANTS
Steve Dear

**(b)** County of Residence of First Listed Plaintiff: **Cook County, Ill**
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant: **Tarrant County**
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
Douglas C. Bracken, Underwood, Perkins, PC
5420 LBJ Freeway, Suite 1900 Dallas, Texas 75240
(972) 661-5114

Attorneys (If Known)
Drew Siegel

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question (U.S. Government Not a Party)
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant) (For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS |  | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 |  | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability |  | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other |  | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability |  |  | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 196 Franchise |  |  | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☒ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | ☐ 791 Empl. Ret. Inc. Security Act | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General |  | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | **IMMIGRATION** | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application |  | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | ☐ 463 Habeas Corpus - Alien Detainee |  | ☐ 950 Constitutionality of State Statutes |
|  | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | ☐ 465 Other Immigration Actions |  |  |

## V. ORIGIN (Place an "X" in One Box Only)

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
Computer Fraud and Abuse Act, 18 USC §1030

Brief description of cause:
Unlawful access to protected computer and taking of information

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
DEMAND $ 5,001.00
CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes ☐ No

## VIII. RELATED CASE(S) PENDING OR CLOSED:
(See instructions)
JUDGE _____ DOCKET NUMBER _____

DATE: 08/03/2010
SIGNATURE OF ATTORNEY OF RECORD: *Douglas Bracken* (signature)

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| MEATS BY LINZ, INC. | § § | |
| Plaintiff, | § § | Civil Action No. _____ |
| v. | § § | JURY DEMAND |
| STEVE DEAR, doing business as The Supreme Foodservices Group, | § § § | |
| Defendants. | § § | |

## COMPLAINT

Plaintiff, Meats by Linz, Inc. ("MBL"), complains of Defendant, Steve Dear ("Dear"), doing business as The Supreme Foodservices Group, and for its Complaint against Defendant, states as follows:

### NATURE OF THE ACTION

1. Plaintiff MBL is a duly organized Illinois Corporation in good standing with its principal place of business located in Calumet City, County of Cook, Illinois, authorized to transact business in the State of Texas, with a Texas facility located at 9010 Sterling Street, Irving, Dallas County, Texas.

2. Defendant Dear is an individual residing in Tarrant County, Texas.

3. MBL seeks injunctive relief and damages as a result of Defendant Dear's violation of the Computer Fraud and Abuse Act ("CFAA"), 18 USCS § 1030, conversion, and breach of contract entered into during Dear's employment with MBL.

## JURISDICTION AND VENUE

4. The court has jurisdiction of the subject matter of this lawsuit pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 2201 and 2202 in that this action arises under the laws of the United States. Supplemental jurisdiction over the state law claims is pursuant to 28 USCS § 1367(a).

5. Venue is proper in this court under 28 U.S.C. § 1391(b) in that the Defendant resides in this judicial district and the Defendant is a resident of the State of Texas.

## STATEMENT OF THE CLAIM

6. MBL is a privately held company with over forty years experience in the meat purveyor business supplying fine dining restaurants, country clubs, hotels, and food vendors the highest quality aged box beef, custom cut beef, pork, lamb, and veal and is an exclusive supplier of the "Steakhouse Preferred" custom cut, portion control steaks and chops.

7. MBL's sales facility in Dallas, Texas is supplied with product cut and packaged at the MBL Calumet City, Illinois facility and shipped to the Dallas, Texas for sales to regional customers.

8. On or about March 28, 2003, Defendant Dear was hired by MBL initially to work on MBL national sales and later was appointed the General Manager of MBL's Dallas, Texas sales facility.

9. As a General Manager, Defendant Dear was responsible for the overall day to day operation of MBL's Dallas, Texas facility and had access to a substantial portion of MBL confidential business information and trade secrets including every MBL customer's name wherever

located and confidential sales and account information such as customer pricing, costs of goods sold, customer contact information and sales histories.

10. An important and vital part of MBL business is the development, maintenance and refinement of confidential customer information that is maintained primarily in password protected computer hard drive storage devices. which is not shared with or readily ascertainable by MBL's competitors. and which provides MBL a competitive advantage over its competitors since it possesses unique customer buying habits, knowledge, and business practices that are not readily known to MBL competitors.

11. Computer passwords for MBL computers are provided only to employees of MBL whose duties and responsibilities would require use of confidential information and trade secrets stored on MBL computers and, depending upon the employee and the employee's duties and responsibilities, password limitations are imposed to restrict what access employees may have to certain confidential MBL computer information, files and trade secrets.

12. Paper copies of MBL confidential business information are not made public and are used only for internal operation purposes by employees needing such information as part of their duties and responsibilities.

13. As a condition of his continued employment with MBL, Defendant Dear entered into a restrictive covenant agreement dated October 19, 2007 whereby in return for MBL's agreement to continue to divulge to Defendant Dear current and future generated MBL confidential information, and in consideration of Defendant Dear's continued receipt of compensation and his continued future employment with MBL, Defendant Dear agreed in part: (i) not to use or otherwise divulge or disclose to others without the express written consent of MBL certain confidential information of

MBL as defined in the agreement; (ii) during and for a two year period following his termination of employment from MBL, not to become employed in a position involving the buying and selling of meats that is in direct competition with MBL in Dallas or Tarrant Counties, Texas, among other locations, and not to solicit or call upon any customer or former customer of MBL to purchase the products sold by MBL; and (iii) not engage in activities that disparage or undermine MBL products, reputation, or business opportunities (hereinafter referred to as "Restrictive Covenant"). See **Exhibit A**, attached hereto and incorporated fully herein.

14.     Following Defendant Dear's agreeing to the terms of the Restrictive Covenant, MBL carried out the agreement terms by continuing to employ Defendant Dear and by providing him access to new confidential information and to the most current and subsequently revised versions of its confidential company information.

15.     On or about February 28, 2010, a Sunday, at approximately 9:15 p.m., in preparation for his departure from MBL's employment, Defendant Dear accessed from a remote computer a MBL company computer and accessed a confidential MBL Gross Profit Report listing each of MBL's Dallas and Fort Worth area customers, along with the customer's pricing, cost of goods sold, and profit margin. A redacted version of the report is attached hereto as **Exhibit B**, and incorporated fully herein.

16.     On the same date, at approximately 11:24 p.m., just a little over two hours after covertly accessing the confidential MBL Gross Profit Report, Defendant Dear disclosed to MBL for the first time his intent to resign by sending an email to MBL containing his formal resignation of employment from MBL, declaring in part that "I have no desire to work for any of the other companies here in town." See **Exhibit C**, attached hereto and incorporated fully herein.

17. Although MBL computer terminals are stationed in both MBL's Dallas, Texas facility and its Calumet City, Illinois facility, any confidential computer information stored, saved or retained on MBL computers is done so on a dedicated server and hard drive physically located in the MBL Calumet City, Illinois facility which is the primary source and locale where MBL confidential computer information is stored, saved or retained.

18. To acquire access to the MBL Gross Profit Report just prior to resigning late Sunday evening, February 28, 2010, Defendant Dear accessed MBL's dedicated computer server and hard drive located in the MBL Calumet City, Illinois facility by using a remote computer, and then downloading and retrieving the reports stored on the MBL's Calumet City, Illinois dedicated computer server and hard drive.

19. Shortly after Defendant Dear's resignation from MBL, Defendant Dear began soliciting customers and potential customers of MBL and distributing business cards to them that identifed his association with "The Supreme Food Service Group" and listed on the reverse side of the card his name, telephone number, and email address. See **Exhibit D**, attached hereto and incorporated fully herein.

20. Less than three weeks following his resignation of employment, Defendant Dear had successfully solicited sales of meat products to Culpeppers Cattle Co., a customer of MBL while Defendant Dear was employed by MBL, and had issued invoicing to Culpeppers Cattle under the name The Supreme Food Service Group. See **Exhibit E**, attached hereto and incorporated fully herein.

21. Following Defendant Dear's abrupt resignation from MBL, The Supreme Food Service Group began issuing product labeling for meat products containing the address of 2459 Southwell Road, Dallas Texas. See **Exhibit F**, attached hereto and incorporated fully herein.

22. 2459 Southwell Road, Dallas, Texas is the same address used by Crystal Creek Cattle Co., Inc. ("Crystal Creek"), a direct competitor of MBL in the Dallas and Fort Worth area.

23. On or about April 28, 2010, Defendant Dear was seen visiting Tillman's Roadhouse, a local Fort Worth, Texas restaurant that was another customer of MBL while Defendant Dear was employed by MBL.

24. Since his abrupt resignation from MBL, Defendant Dear has utilized the contents of the MBL Gross Profit Reports and information contained therein to successfully solicit and sell meat products to several of the accounts listed on the MBL Gross Profit Reports.

## COUNT I
## Computer Fraud and Abuse Act

25. Plaintiff incorporates paragraphs 1 through 24 as paragraph 25 of Count I as if fully alleged herein.

26. The MBL computers Defendant Dear used during his employment with MBL were each a "protected computer" as defined by the Computer Fraud and Abuse Act ("CFAA"), 18 USC § 1030(e)(2)(B), because they were computers used across state lines and as a part of interstate commerce and communication.

27. MBL computer terminals are stationed in both MBL's Dallas, Texas facility and its Calumet City, Illinois facility, and information entered into these computers is manipulated through a dedicated server and hard drive physically located in the MBL Calumet City, Illinois facility where users log into a password protected computer program using either a computer

physically located at a MBL facility or by accessing the system through a remote computer access program.

28. The MBL computer system is used to process orders for customers in both Texas and Illinois and is also used to track and store confidential MBL sales, costs, profits, and customer information including but not limited to MBL operations in both Texas and Illinois.

29. To acquire access to the MBL Gross Profit Report just prior to resigning Sunday evening February 28, 2010, Defendant Dear, in anticipation of his resignation from MBL and start up of a new competing business, accessed without authorization the MBL=s dedicated computer server and hard drive using a remote computer in Texas, retrieved the reports from the MBL's Calumet City, Illinois computer server and hard drive, and downloaded the reports to the remote computer he was using in Texas.

30. Section 1030(a) of the CFAA makes it unlawful for anyone to intentionally access a computer without authorization or in excess of their authorized access, and thereby obtain information from any protected computer. 18 USC §1030(a)(2)(C).

31. Section 1030(g) of the CFAA allows any person who suffers damage or loss by reason of a violation of the CFAA to proceed with a civil action and obtain compensatory damages and injunctive relief or other equitable relief where the violation involves loss to a person during a one-year period aggregating at least $ 5,000 in value. 18 USC § 1030(g).

32. Defendant Dear violated Section 1030(a) of the CFAA by intentionally accessing a MBL protected computer without authorization and in excess of his authorized access, and obtaining access to MBL's confidential data, resulting in damage or loss to MBL aggregating at least $ 5,000 in value.

## COUNT II
## BREACH OF CONTRACT

33. Plaintiff incorporates paragraphs 1 through 32 as paragraph 33 of Count II as if fully alleged herein.

34. The Restrictive Covenant is explicitly governed by Illinois law by the agreement's own terms.

35. MBL has a valid enforceable contract with Defendant Dear under both Illinois law and Texas law.

36. MBL has performed all required conditions of the Restrictive Covenant.

37. By soliciting customers of MBL following his abrupt resignation from MBL, Defendant Dear has materially breached the terms of the Restrictive Covenant.

38. By downloading and accessing confidential MBL customer lists and pricing information without authorization with the intent of utilizing the information to solicit MBL customers following his abrupt resignation from MBL, Defendant Dear has materially breached the terms of the Restrictive Covenant.

40. Defendant Dear's material breach of the Restrictive Covenant is a direct and proximate cause of damages to MBL, which include but are not limited to lost revenues, attorneys fees and costs.

41. An actual controversy exists between the parties.

## COUNT III
## CONVERSION

42. Plaintiff incorporates paragraphs 1 through 41 as paragraph 42 of Count III as if fully alleged herein.

43. MBL owned and had lawful possession of the Gross Profit Report and was entitled to its possession.

44. Defendant Dear unlawfully and without authorization assumed and exercised control over the Gross Profit Report to the exclusion of, and inconsistent with, MBL's rights as an owner.

45. MBL's demand for Defendant to return the converted Gross Profit Report would have been futile since the value of the report is measured by its confidential nature and MBL's exclusive use to the exclusion of its competitors and, therefore, once converted by Defendant Dear for use outside that permitted by MBL, Defendant Dear could no longer return it in its unaltered state.

46. Defendant Dear's illegal and unauthorized conversion of the confidential Gross Profit Report is a direct and proximate cause of damages to MBL.

47. Defendant Dear's illegal conversion of the confidential Gross Profit Report was intentional, wanton and malicious warranting the entry of punitive damages.

## COUNT IV
## INJUNCTIVE RELIEF

48. MBL incorporates paragraphs 1 through 47 as paragraph 48 of Count IV as if fully alleged herein.

49. The Gross Profits Report constitutes a trade secret since it consists of a compilation of customer information identifying customer names, pricing information, costs and profit margins per customer, and customer product preferences used in MBL's business which has taken years to

continuously develop, and provides MBL an advantage over its competitors who do not know or otherwise have available this information for their own use.

50. The Gross Profits Report is a continuously updated computerized report that is password protected to ensure that its contents are not shared with persons at MBL without need to know of the information and to ensure that neither the report nor its contents is made available to MBL's competitors.

51. Defendant Dear owes MBL a duty both during his employment with and following his termination from MBL to refrain from using confidential or proprietary information and trade secrets acquired during his employment with MBL in a manner adverse to MBL.

52. Under Texas common law, injunctive relief is an appropriate remedy that will curtail Defendant Dear's violation of duty to refrain from using confidential or proprietary information and trade secrets of MBL in a manner adverse to MBL.

53. The Plaintiff MBL requires injunctive relief to prevent Defendant Dear from continuing to violate his contractual obligations to MBL including preventing Defendant Dear from disclosing and wrongfully using trade secrets and confidential, proprietary information illegally obtained from MBL and to prevent Defendant Dear from illegally soliciting and serving MBL customers listed in the Gross Profits Report

54. MBL enjoys a substantial likelihood that it will prevail on the merits and probable right to the relief sought in that Defendant Dear is legally and contractually prohibited from illegally converting MBL confidential property and soliciting MBL's customers following his MBL termination.

55. MBL will suffer a substantial, probable and imminent threat of irreparable injury if the injunction is not granted in that Defendant Dear will continue to utilize illegally converted confidential information of MBL to his own advantage and to the disadvantage of MBL.

56. MBL's threatened injury outweighs the threatened harm to Defendant Dear.

57. Granting the preliminary injunction will not disserve the public interest.

58. In the event that this court deems any portion of the Restrictive Covenant sought to be enforced unreasonable, MBL requests that the provision be modified by the court to the extent the court deems reasonable.

59. Justice and equity warrants the waiving of requiring a bond posting, however, if the court requires a bond be posted, MBL is willing to post the necessary reasonable bond to facilitate the injunctive relief requested.

60. The only adequate, effective, and complete relief to the plaintiff is to restrain the defendant from further engaging in certain proscribed activities, as set forth below. Pursuant to Tex. R. Civ. P. § 680 et seq. and Tex. Civ. Prac. & Rem. Code § 65.001 *et seq.*, and in order to preserve the status quo during the pendency of this action, the plaintiff seeks upon hearing a preliminary and permanent injunction ordering and restraining the Defendant, including Defendant Dear's agents, servants, employees, independent contractors, attorneys, representatives, and those persons or entities in active concert or participation with them (collectively, the "Restrained Parties") as follows:

    a. That Defendant Dear, individually and on behalf of The Supreme Foodservices Group, and those acting in concert with him, be restrained and enjoined from continuing to offer or offering any service that involves selling or purchasing meat product for human consumption to any business or other venture listed on the Gross Profits Report.

    b. That Defendant Dear be restrained and enjoined from using or further disclosing directly or indirectly any confidential information taken from MBL or rightfully belonging to MBL including but not limited to information contained in the Gross Profit

Report, other non-public information concerning the financial data, strategic business plans, product development (or other proprietary product data), trade secrets, customer names and lists, and other confidential information made available to Defendant Dear while employed by MBL relating to MBL customers, suppliers, and vendors, marketing plans, efforts, and techniques, and other non-public, proprietary and confidential information of MBL; and

      c.     Enjoining the Defendant Dear from the destruction or deletion of any documents, evidence or record, electronic or otherwise, that relates to any of the matters implicated by this lawsuit or pertaining to MBL.

WHEREFORE MBL prays that judgment be entered in its favor and against Defendant and that this court issue an order granting it the following relief:

      a.     Restraining and enjoining Defendant Dear, individually and on behalf of The Supreme Foodservices Group, and those acting in concert with him, from continuing to offer or offering any service that involves selling or purchasing meat products to any business or other venture listed on the Gross Profits Report.

      b.     Restraining and enjoining Defendant Dear from using or further disclosing directly or indirectly any confidential information taken from MBL or rightfully belonging to MBL including but not limited to information contained in the Gross Profit Report;

      c.     Restraining and enjoining Defendant Dear from the destruction or deletion of any documents, evidence or record, electronic or otherwise, that was obtained from a MBL protected computer;

      d.     An award of compensatory and punitive damages;

      e.     Pre- and post judgment interest as provided by law;

      f.     An award of attorneys fees and costs, including but not limited the costs of expert consultants; and

      g.     For such further relief as the court deems equitable and just.

Respectfully submitted,

**UNDERWOOD PERKINS, P.C.**
Two Lincoln Centre
5420 LBJ Freeway, Suite 1900
Dallas, Texas 75240
(972) 661-5114 Telephone
(972) 788-3359 Facsimile

By _/s/ Douglas Bracken_
Douglas C. Bracken, Lead Counsel
State Bar No. 00783697

**ATTORNEY FOR PLAINTIFF
MEATS BY LINZ, INC.**